UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JERRY DOWELL BAILEY, JR., #194330,

    Plaintiff,     Case No. 1:08-cv-542

v.             Honorable Robert Holmes Bell

CHRISTOPHER KING, et al.,  **REPORT AND RECOMMENDATION**

    Defendants.

    This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff is currently a security level 5 inmate at the Baraga Maximum Correctional Facility (AMF). His complaint concerns the conditions of his confinement on February 7, 2008 at the Ionia Maximum Correctional Facility (ICF).[1] Plaintiff named three State employees at ICF as defendants: Corrections Officer Christopher King, Corrections Officer Kenneth Russell, and a John Doe corrections officer. Plaintiff alleges that defendant King used excessive force against him in violation of his Eighth Amendment rights. He alleges that defendants Russell and Doe were deliberately indifferent to the risk of an assault by Officer King when they failed to intervene. Plaintiff asks the court to exercise supplemental jurisdiction over purported state-law claims. He

---

[1] ICF prisoners are the highest security risk and least manageable inmates in the State. *See Barber v. Overton*, 496 F.3d 449, 450 (6th Cir. 2007)(ICF "houses male prisoners who pose an extreme escape risk or who have clearly demonstrated a history of violent acts towards other prisoners and staff."); *Crump v. Curtis*, 50 F. App'x 217, 218 (6th Cir. 2002)(same); *Riggins-El v. Toombs*, No. 96-2484, 1997 WL 809980, at * 1 (6th Cir. Dec. 23, 1997) (ICF "historically houses the least manageable and highest security prisoners in the Michigan correctional system.").

sued defendants in their individual capacities. He seeks an award of monetary damages and declaratory and injunctive relief.

The matter is now before the court on a motion for summary judgment by defendants King and Russell. (docket # 17). Plaintiff requested and received an extension of time within which to file his response. Plaintiff has filed his response (docket #'s 32-35), and defendants' motion is ready for decision. For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted. I further recommend that the court, in its discretion, decline to exercise supplemental jurisdiction. I further recommend that all plaintiff's claims against the John Doe defendant be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure. Plaintiff filed his complaint on June 9, 2008. He has never amended his complaint to allege John Doe's identity and defendant Doe has not been served or otherwise appeared in this lawsuit. This report and recommendation serves as plaintiff's notice of the impending dismissal of all his claims against John Doe. An order implementing these recommendations should be entered. I further recommend that a separate and final judgment be entered in favor of defendants King and Russell on all plaintiff's federal claims.

**Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Synbrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Reed v. International Union, United Aerospace & Agric. Implement Workers of Am.*, 569 F.3d 576, 579 (6th Cir. 2009).

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is serving lengthy prison sentences, the majority of which were imposed on September 29, 2004 when he was sentenced as a habitual offender, third felony offense, following a Wayne County Circuit Court jury trial in which he was convicted of three counts of armed robbery, one count of first degree home invasion, one count of being a felon in unlawful possession of a firearm, and one count of possession of a firearm during the commission of a felony. *People v. Bailey*, No. 258705, 2006 WL 954189 (Mich. Ct. App. Apr. 13, 2006). His most recent sentence of 5-to-15 years' incarceration was imposed by the Ingham County Circuit Court on February 5, 2008, after an jury found plaintiff guilty of being a prisoner in unlawful possession of a weapon. The events giving rise to this lawsuit occurred after sentencing, when plaintiff was returned to the custody of the Michigan Department of Corrections (MDOC) at the Ionia Maximum Correctional Facility (ICF).

ICF is Michigan's highest security level prison. On February 6, 2008, plaintiff was involved in a fight with another ICF prisoner. Before prison officials could move plaintiff into ICF's administrative segregation unit,[2] it was necessary to search him for weapons and contraband. Plaintiff "refused" to allow corrections officers to complete the search and he "engaged in a verbal dispute" with the corrections officers. (Plf. Aff., ¶¶ 1-3). He received major misconduct citations for disobeying a direct order and threatening behavior. (*Id.* ¶ 4). Later that day, plaintiff "tried

---

[2]"The Administrative Segregation Units of prisons are the highest security level units which are reserved for the most dangerous and/or disruptive of prisoners. Prisoners in administrative segregation are fed in their cells, are escorted by two or more staff members for all out-of-cell movements, and are required to be handcuffed and leg shackled for all out-of-cell movements." *Tensley v. Alexander*, 822 F. Supp. 411, 412 (E.D. Mich. 1993).

unsuccessfully to get his legal property, but only ended up getting into a verbal confrontation with the unit 2 staff." (*Id.* ¶ 5).

On February 7, 2008, Sergeant Davis attempted to review with plaintiff the multiple major misconduct citations he had earned. (Plf. Aff. ¶ 23). Plaintiff demanded his legal property and Davis responded that it would be brought to plaintiff's administrative segregation cell sometime later that day. (*Id.*, ¶ 9). Approximately an hour later, defendants King, Russell, and a third unidentified corrections officer came to plaintiff's cell with his legal property.

ICF prisoners are placed in restraints and are escorted by multiple corrections officers during any out-of-cell movements. Defendant King directed plaintiff to back up to the slots in his cell door so that the escorting officers standing outside his cell could apply restraints. The restraints were applied without incident, and the officers opened the door to plaintiff's cell. (*Id.* ¶ 10). For security reasons, escorting officers stand behind prisoners and prisoners are required to face forward. Plaintiff states that Officer King's directive not to look him in the eye was accompanied by racial epithets. (*Id.* ¶ 11). He states that Officer Russell and an unknown corrections officer escorted him down the hall and directed him to stand facing a wall while King deposited his legal property inside the cell. (*Id.* ¶ 12). He states that when King exited the cell he used another epithet. (*Id.* ¶ 13). Russell and the unknown officer escorted plaintiff back to his cell. Plaintiff states that when King pushed him into his cell King made another racially offensive comment and "punched him in the back and in the back of his head."[3] (*Id.* ¶ 14). Once plaintiff was securely locked back inside his cell, the officers standing outside began the process of removing plaintiff's restraints through the

---

[3]Officer King denies making any racially offensive comments, punching plaintiff, or abusing plaintiff's wrist or arm. (King Aff. ¶¶ 1-6).

door slots. Officer Russell removed plaintiff's leg restraints. (*Id.* ¶ 15). Plaintiff states that after defendant King had removed one of his handcuffs, he braced his wrist against the door frame, ostensibly to prevent Officer King from "banging" plaintiff's wrist against the door slot. (*Id.*). When plaintiff started resisting, Officer King temporarily secured the empty handcuff onto the cell door, thus preventing plaintiff from obtaining a weapon by pulling the handcuffs into his cell. (*Id.*). Shortly thereafter, Sergeant Davis removed the handcuff from plaintiff's wrist without incident. (*Id.*). Plaintiff states that he suffered minor injuries which consisted of some swelling, soreness, and bruising on his arm and a lump on his head which "disappeared" shortly after the incident. (*Id.* ¶ 18).

Officer Russell was present during plaintiff's out-of-cell movement on February 7, 2008. He did not observe Officer King punch plaintiff. He did not see King abuse plaintiff's wrist or arm. He did not hear any of the offensive statements plaintiff now attributes to Officer King. (Russell Aff. ¶¶ 1-7).

On the morning of February 8, 2008 at 8:09 a.m., plaintiff received a mental status examination. He did not report any assault or battery committed by Officer King. He did not claim that he suffered any injuries on February 7, 2008. Plaintiff admitted that on February 6, 2008, he had been involved in a fight with another prisoner:

> Mr. Bailey was alert and oriented times 4. He was well groomed in regular prison attire. His affect was euthymic. He was cooperative. His thought process and speech were well within normal limits. He reports no suicidal or homicidal thoughts and was not having any delusions or hallucinations. Mr. Bailey reports getting into a fight with another inmate. He was ticketed and taken over to Unit I. Mr. Bailey stated that he was having some emotional issues due to the death of a loved one. He did [acc]ept responsibility for his behavior.

(docket # 18, Ex. F). Later on February 8, 2009, plaintiff filed a health care request claiming that he had been assaulted. During a February 9, 2009 medical examination plaintiff stated, "I had a knot

on my head but it has gone down now and I had a bruise on my arm but it [is] fading. I still have some pain in my arm." Upon examination, plaintiff did not have a knot on his head. His right arm was not swollen and he was able to move it without difficulty. The nurse supplied plaintiff with Tylenol and a cold compress in response to his pain complaints and what appeared to be a slight discoloration on his right inner forearm. (*Id.*).

Plaintiff waited until February 12, 2008 to draft his grievance against Officer King (docket # 1, Ex. 1) and the prison's grievance coordinator did not receive it until February 15, 2008. The grievance coordinator designated the grievance as number ICF-08-02-0350-26a. Plaintiff claimed that Officer King had subjected him to a single racial epithet as he was exiting plaintiff's cell. King purportedly punched plaintiff "twice" in the back of the shoulder and head. Plaintiff stated that he resisted King after one of his handcuffs had been removed by keeping his hands outside his cell door until Sergeant Davis came and removed the remaining handcuff. (*Id.*). Plaintiff's grievance was found to be meritless because, among other things, there was no evidence that plaintiff had been subjected to any inappropriate use of force and plaintiff had not complained to Sergeant Davis that any assault had occurred. Sergeant Davis had been present when plaintiff's restraints had been removed. (*Id.*). Plaintiff pursued unsuccessful Step II and III grievance appeals. (*Id.*). He filed this lawsuit on June 9, 2008.

## Discussion

1. Eighth Amendment Claims

As a prisoner incarcerated under a criminal conviction, plaintiff's principal substantive rights are guaranteed by the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See*

*Ingraham v. Wright*, 430 U.S. 651, 664 (1977). The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crimes. To establish a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause, the offending conduct must reflect an unnecessary and wanton infliction of pain. *See Ingraham*, 430 U.S. at 670. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause the core judicial inquiry is that set out in *Whitley [v. Albers*, 475 U.S. 312, 320-21 (1986)]: whether the force was applied as a good faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Plaintiff must satisfy both an objective and subjective test to establish a viable Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Plaintiff has not presented evidence upon which any rational trier of fact could find in his favor on either component of his Eighth Amendment claims against defendants.

        A.        Excessive Force Claim Against Officer King

To meet the objective component, the prisoner must be subjected to a serious deprivation. *Wilson*, 501 U.S. at 298. The federal courts recognize that an Eighth Amendment claim based on the excessive use of force must allege more than a simple assault and battery. *See, e.g., Leary v. Livingston County*, 528 F.3d 438, 445 (6th Cir. 2008); *Pruett v. Hatchett*, 292 F. App'x 408, 409 (5th Cir. 2008). To be sure, under *Hudson v. McMillian*, guards may not inflict an unjustified beating upon a prisoner and then seek to defend their actions by the lack of serious or life-threatening injuries. *See McHenry v. Chadwick*, 896 F.2d 184, 187 (6th Cir. 1990). By the same token, if the objective component of the Eighth Amendment is to mean anything, it cannot be satisfied by a mere

unwanted touching. *See Walters v. Corrections Corp. of Am.*, 119 F. App'x 190, 192-93 (10th Cir. Dec. 2004); *Samuels v. Hawkins*, 157 F.3d 557, 558 (8th Cir. 1998); *Hampton v. Alexander*, No. 95-3457, 1996 WL 40237, at * 1 (6th Cir. Jan. 31, 1996) ("[N]ot every push or shove, even if it appears to be unnecessary, violates a prisoner's constitutional rights."); *Norman v. Taylor*, 25 F.3d 1259, 1262-63 (4th Cir. 1994) (*en banc*). Viewing the evidence in the light most favorable to plaintiff, he suffered a few brief touchings by Officer King while King was in the process of returning him to his cell and removing his restraints, all of which were so slight that they went unreported by plaintiff during an examination conducted the next morning. This does not approach satisfying the objective component of an Eighth Amendment claim.

Plaintiff falls short of satisfying the subjective component of an Eighth Amendment claim. One factor the court can look to in determining whether the defendant's use of force could plausibly have been thought necessary is the extent of injury suffered by the inmate. *Hudson*, 503 U.S. at 7; *see Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008). Plaintiff did not claim that he suffered any injury as a result of being pushed back into his administrative segregation cell. Any injuries he suffered were so slight that examining medical professionals found no evidence supporting plaintiff's claim that he had been punched. Further, plaintiff had no swelling or loss of motion in his arm. Plaintiff had been involved in a fight with another inmate on February 6, 2008, and when the nurse examined him on February 9, 2008, she observed a minor skin discoloration on plaintiff's right arm. Assuming for present purposes that plaintiff sustained this minor injury when Officer King was removing his handcuffs, it cannot possibly rise to the level of Cruel and Unusual punishment. Minor injuries such as bruises and swelling are generally insufficient to support a claim under the Eighth Amendment's Cruel and Unusual Punishments Clause. *See, e.g.*, *Silguero v.*

*Acheson*, No. 7:08-cv-201, 2009 WL 56341, at * 2 (N.D. Tex. Jan. 9, 2009) (collecting cases). "In determining whether the use of force was wanton or unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. at 321). It is difficult to imagine a prisoner who posed a greater threat to the safety of prison guards and other prisoners than plaintiff did on the date in question. On February 7, 2008, he was an inmate in Michigan's highest security level prison. He was being housed in the prison's administrative segregation unit because he had been involved in a fight with another prisoner. He had recently received major misconduct citations for disobeying a direct order and threatening behavior. The alleged incident occurred two days after plaintiff had been sentenced on a felony conviction for being a prisoner in unlawful possession of a weapon. Any force Officer King used against plaintiff was *de minimis*. No reasonable trier of fact could find on the present record that Officer King[4] acted maliciously and sadistically for the purpose of causing plaintiff serious harm. *See Hudson*, 503 U.S. at 7.

---

[4]Plaintiff's claim that King used offensive language fails to state a federal constitutional claim. Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir.2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan.21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

B. Deliberate Indifference Claim Against Officer Russell

Plaintiff's claim against Officer Russell is that he was deliberately indifferent to the risk of Officer King assaulting plaintiff. (Compl., ¶ 15). To establish liability under the Eighth Amendment for a claim based on failure to prevent harm to a prisoner, a plaintiff must show that defendant Russell acted with "deliberate indifference" to the risk that Officer King would cause him serious harm. *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Plaintiff has not presented evidence on which a reasonable trier of fact could find in his favor on the objective or subjective components of such a claim. The risk plaintiff faced was not objectively serious. Plaintiff was briefly allowed outside his administrative segregation cell and Officer King's use of force in putting plaintiff back into the cell and in removing the handcuffs was *de minimis*. Plaintiff falls well short of satisfying the subjective component. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. The use of force, if any, witnessed by Officer Russell would not have alerted him to a substantial risk of serious harm.

I find that defendants King and Russell are entitled to judgment in their favor as a matter of law on plaintiff's Eighth Amendment claims.

2. <u>Supplemental Jurisdiction</u>

Plaintiff asks the court to exercise jurisdiction. "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009). There is no reason in this case to depart from the general rule.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the motion for summary judgment by defendants King and Russell (docket # 17) be granted. I further recommend that the court, in its discretion, decline to exercise supplemental jurisdiction. I further recommend that all plaintiff's claims against the John Doe defendant be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure. This report and recommendation serves as plaintiff's notice of the impending dismissal of his claims against John Doe. An order implementing all the aforementioned recommendations should be entered. I further recommend that a separate and final judgment be entered in favor of defendants King and Russell on all plaintiff's federal claims.

Dated: October 20, 2009        /s/ Joseph G. Scoville
                                                   United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).